IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | |
| A PURPLE-COLORED APPLE IPHONE, SEIZED FROM RAESEAN MALEEK WILSON, LOCATED IN ATF CUSTODY AT 1000 LIBERTY AVENUE, SUITE 1414, PITTSBURGH, PA 15222 | Magistrate No. 23-191 |
| A BLACK-COLORED APPLE IPHONE, SEIZED FROM RAESEAN MALEEK WILSON, LOCATED IN ATF CUSTODY AT 1000 LIBERTY AVENUE, SUITE 1414, PITTSBURGH, PA 15222 | Magistrate No. 23-192 |

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANTS**

I, Ryan P O'Sullivan, being duly sworn, depose and state that:

**INTRODUCTION AND AGENT BACKGROUND**

1. This Affidavit is made in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for the issuance of search warrants authorizing the search of two cellular telephones currently in law enforcement custody as described below and in Section I of Attachment A, and the extraction from that property of the electronically stored information described in Section II of Attachment A.

2. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Pittsburgh Field Office, Group II. I have been employed as an ATF Special Agent since September of 2015. While at the ATF National Academy, I received extensive training in investigating federal firearms, arson, explosives, and narcotics related violations, conducting surveillance, establishing probable cause, and executing search and arrest warrants.

3. As an ATF Special Agent, I am an "Investigative or Law Enforcement Officer" of

the United States within the meaning of Title 18, United States Code Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

4. As an ATF Special Agent, I am responsible for enforcing Federal criminal statutes and am authorized to serve arrest and search warrants under the authority of the United States. I have participated in numerous federal and state search warrants related to firearms, arson, explosives and narcotics violations, and I have assisted in the writing of affidavits to this effect.

5. I have participated in criminal investigations with ATF as well as other federal, state and local law enforcement agencies relating to violations of various federal laws. I have has been involved in firearms related arrests and the execution of search warrants and arrest warrants, which resulted in the seizure of firearms and has assisted in the supervision of activities of confidential informants who provided information and assistance resulting in controlled purchases of firearms.

6. As an ATF Special Agent, I am familiar with the way in which individuals involved in illegal trafficking of firearms or and/or narcotics use cellular telephones, and that evidence can be obtained from the cellular telephones of individuals involved in that illegal activity.

7. The information contained herein is based upon my own personal investigation, observations, and knowledge, as well as upon the investigation, personal observations, and knowledge of other law enforcement officers with whom I have discussed this case. Because this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a search warrant, I have not included every item of evidence or piece of information known to me; rather, I have included only those facts necessary to establish probable cause.

2

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. This Application and Affidavit are being submitted in support of search warrants for the following electronic devices, which are currently stored in evidence at the ATF Pittsburgh field office, located at 1000 Liberty Avenue, Suite 1414, Pittsburgh, PA 15222:

   a. A purple-colored Apple iPhone, labeled ATF item 020 under case number 766055-23-0021 (hereinafter referred to as **TELEPHONE 1**).

   b. A black-colored Apple iPhone, labeled ATF item 021 under case number 766055-23-0021 (hereinafter referred to as **TELEPHONE 2**).

9. Investigators, including myself, believe the records and other information contained within **TELEPHONE 1** and **TELEPHONE 2** contain evidence that **Raesean Maleek WILSON** (hereinafter referred to as WILSON), knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), (hereinafter referred to as the **TARGET OFFENSE**).

10. The applied-for warrants would authorize the forensic search of **TELEPHONE 1** and **TELEPHONE 2** for the purpose of identifying electronically stored data particularly described in Section II of Attachment A.

## FACTS RELATING TO PROBABLE CAUSE

### INCIDENT #1 – SEPTEMBER 21, 2022

11. On September 21, 2022, Pittsburgh Bureau of Police (PBP) Officers were conducting surveillance in the Northview Heights Community. Officers are permanently assigned to patrol this area due to the high rate of gun violence, gang activity and open-air narcotics sales.

12. While conducting surveillance utilizing the Housing Authority of the City of Pittsburgh cameras, Officers observed Raesean WILSON and a male later identified as Joseph CLECKLEY, as the occupants of a black 2018 Jeep Cherokee bearing PA: LZF-5317. PBP Intel has previously associated both WILSON and CLECKLEY with the Northview Heights Crips gang.

13. Officers observed WILSON open the driver side door of the vehicle and observed CLECKLEY sitting inside of the vehicle in the passenger seat with a firearm containing an extended magazine sitting directly on his lap.

14. Both WILSON and CLECKLEY are previously convicted felons and are therefore prohibited from purchasing and possessing firearms.

15. Officers then observed WILSON and CLECKLEY park and exit the vehicle in the 1400 block of Chicago Street and enter a residence. Once WILSON and CLECKLEY were observed on camera leaving the residence, officers approached and detained WILSON and CLECKLEY and conducted a pat down on both and placed them into the back of marked vehicles.

16. Officers were then able to observe two firearms inside the vehicle in plain view through the windows. One was located on the driver's side, and one was located on the passenger side.

17. WILSON and CLECKLEY were brought to the Allegheny County Jail on state charges stemming from this incident.

18. Officers then towed the vehicle to Zone 1 for observation due to the vehicle being located in a high crime area and there not being sufficient manpower to sit on the vehicle, pending the approval of a nighttime search warrant on the vehicle.

19. On September 22, 2022, the Honorable Judge Thomas S. Brletic granted and signed a nighttime search warrant which was executed at approximately 12:40am.

20. While searching the vehicle, Officers recovered multiple items of evidentiary value to include two loaded firearms.

21. On the driver's side floorboard where WILSON was previously observed to be seated, officers recovered a loaded **Glock pistol, model:45, caliber: 9mm, SN: BWVL769** with a blue-colored hand grip.

22. On the passenger's side floorboard where CLECKLEY was previously observed to be seated, Officers recovered a loaded **Glock pistol, model: 19 Gen 5, caliber: 9mm, SN: BPWU982**.

23. On or about September 21, 2022, law enforcement located the below digital photograph on WILSON's Instagram account. This picture depicts WILSON holding what appears to be the same Glock pistol model 45 (including the blue-colored hand grip) that was recovered from WILSON's vehicle on September 22, 2022. This photograph appears to be a "selfie," which is a picture that appears to be taken by WILSON who also appears in the photograph.



5

24. WILSON was on Allegheny County Adult Probation and CLECKLEY was on Federal Supervised Release at the time of this incident.

25. On October 26, 2022, WILSON was transferred from the Allegheny County Jail to the Renewal Center.

26. On November 30, 2022, state charges pertaining to this incident were withdrawn, although a federal indictment had not yet been filed.

27. On December 2, 2022, WILSON was released from the Renewal Center.

## INCIDENT #2 – JANUARY 26, 2023

28. On January 3, 2023, a Federal Grand Jury seated in the Western District of Pennsylvania returned a two-count indictment, charging WILSON and CLECKLEY each with one count of 18 U.S.C. § 922(g)(1). A federal arrest warrant was subsequently issued for WILSON, as CLECKLEY was already in custody.

29. WILSON'S immediate whereabouts were unknown, and his federal arrest warrant was entered into NCIC.

30. On January 26, 2023, Troopers Samuel Jenesky and Donald Marsh of the Pennsylvania State Police (PSP) were on duty and working an 11:00pm to 7:00am shift.

31. While traveling West on Interstate 376, Trooper Marsh observed a black Jeep Cherokee SUV, bearing PA. REG: LZF5317, traveling in the left lane, when the SUV suddenly changed lanes, crossing a solid white line and almost impacting their patrol vehicle. When Trooper Marsh observed this violation, he was traveling in the center travel lane of the Westbound lanes, and the Jeep Cherokee was traveling in the left turning lane. Traffic was light and the roadway was dry. Trooper Marsh estimated that the Jeep Cherokee was traveling at approximately 60-65 MPH.

Although road conditions were dry and traffic was light, operating a vehicle in such a careless manner causes a serious disregard for the safety of all persons and property.

32. Troopers noted that the Jeep Cherokee was equipped with aftermarket dark window tint, which included all side windows, the rear windshield, and front windshield. Based on Troopers training and experience, they know that dark window tint on vehicles can be utilized by the occupants to conceal criminal activity being conducted within the cabin of the vehicle.

33. After these observations, Troopers conducted a registration check of the Jeep Cherokee through CLEAN/NCIC. Results showed that the vehicle was registered to Raesean Maleek WILSON. Results further showed that WILSON had an active arrest warrant via The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). After learning this, Troopers prepared to initiate a traffic stop on the Jeep Cherokee at a safe location.

34. The Jeep Cherokee then made a sudden exit off the highway at the Stanwix Street Exit and proceeded to travel on Stanwix Street to its intersection with the Boulevard of the Allies. The Jeep Cherokee then made a right onto the Boulevard of the Allies.

35. At approximately 1:45am, Troopers activated their emergency lights and signaled the vehicle to stop. Upon activating the vehicle's overhead lights, the Jeep Cherokee began to slow and fluctuate speed. Troopers used their vehicle's spotlights to illuminate the interior of the Jeep Cherokee. At this time, Troopers observed the occupant of the vehicle to be moving and turning towards the back-seat area of the vehicle. The vehicle then came to a complete stop on Boulevard of the Allies.

36. Based on the observation of furtive movements and the severity of the owner's active warrant, Troopers conducted a felony stop on the vehicle and utilized their patrol vehicle's PA system and ordered the operator and any other occupants out of the vehicle. The operator of

the Jeep Cherokee was identified as Raesean Maleek WILSON and he was detained. WILSON was found to be the only occupant of the vehicle.

37. While speaking to WILSON, a strong odor of marijuana was detected coming from his person. Trooper Marsh asked WILSON if he had anything illegal on him and he stated that he did not. WILSON was asked if there was any marijuana inside the vehicle, which he stated "No". Trooper Marsh asked WILSON if he recently smoked marijuana inside the vehicle, which he indicated that he did. At this time, Trooper Marsh asked WILSON if he could search the vehicle, which he stated "No". WILSON was advised that a Police Canine was going to be contacted to respond to the scene.

38. At approximately 2:40am, Corporal Christina Marth and Canine Goran arrived at the scene. Cpl. Marth advised WILSON and Trooper Marsh that Canine Goran alerted to the open driver's side window to the odor of illegal controlled substances that he has been trained to detect.

39. At this time, Trooper Marsh advised WILSON that his vehicle was going to be seized and a Search Warrant was going to be prepared and applied for to search the vehicle.

40. The Jeep Cherokee was towed to PSP-Pittsburgh, where it was secured and entered into evidence.

41. WILSON was transported to PSP-Pittsburgh, where I read him his Miranda Rights in the presence of Trooper Jenesky and Trooper Marsh. WILSON was advised of the situation and stated that he did not want to speak to me or the Troopers, and that he would like to have his attorney present before answering any questions. At this time, we did not ask any additional questions of WILSON.

42. WILSON was transported to the Allegheny County Jail.

43. On January 26, 2023, at approximately 9:00am, Troopers Jenesky and Marsh were advised that a State Search Warrant for WILSON's vehicle was granted by the Honorable Judge Thomas S. Brletic.

44. Troopers Jenesky and Marsh executed the State Search Warrant and seized one **Glock pistol, model 21, caliber .45 AUTO, SN: MHH964**, loaded with an extended magazine and 23 total live rounds to include one in the chamber, suspected marijuana (approximately 31 grams), two stamp bags of fentanyl, one purple-colored Apple iPhone **(TELEPHONE 1)**, one black-colored Apple iPhone **(TELEPHONE 2)**, one spent .45 AUTO shell casing, one bottle of Promethazine with Codeine Syrup, and indicia belonging to WILSON, specifically a Pennsylvania Vehicle Registration indicating the Jeep Cherokee was in fact registered to WILSON. These items were entered into PSP evidence.

45. The purple-colored Apple iPhone (**TELEPHONE 1**) was located on WILSON's person in his front pants pocket and the black-colored Apple iPhone (**TELEPHONE 2**) was plugged into a charger in the center cupholder area between the driver's and front passenger seats.

46. On January 26, 2023, I took custody of all items listed above.

47. I am aware, through both training as well as experience gained through multiple firearms related investigations, that the targets of those investigations utilize cellular telephones to not only arrange meetings with their associates but also to speak with co-conspirators regarding the acquisition of illegal firearms.

48. Based upon my training and experience, I am aware that members of street gangs often times are involved in the possession of illegal firearms and frequently take group photographs with other enterprise members posing with firearms, paraphernalia, money and/or drugs. Many cellular telephones, including **TELEPHONE 1** and **TELEPHONE 2**, have a camera

feature that is readily capable of capturing and storing these group photos. In my experience, the cellular telephones of individuals who illegally possess firearms often contain evidence of unlawful firearm possession in the form of text messages, e-mails, and social media posts. It has also been my experience that such phones often contain information regarding how an unlawful possessor acquired his firearm.

49. Based on my experience and familiarity with cellular telephones, I am aware that the telephones have voicemail and telephone directory features, as well as camera features which allow the user to take photographs and store them in the cellular phone's memory card. Based on my experience and training, statements by other law enforcement officers, and personal observations, I know that because of the storage capacity of cellular telephones, the portability of cellular telephones, the ease with which information stored on a cellular telephone may be accessed and/or organized, and the need for frequent communication in arranging transactions, cellular telephones are frequently used by individuals involved in firearms trafficking.

50. Additionally, I know that persons, like WILSON, who are legally prohibited from the purchase and possession of firearms acquire firearms through unlawful means. In order to do so, the solicitation and transaction thereof is often conducted via digital media devices and the conversations, pictures, and specifics of the transaction are often stored within cellular devices. Furthermore, I am aware that individuals engaged in illicit activity will employ the use of multiple cellular phones in order to thwart law enforcement detection, to conduct separate transactions with customers and suppliers, and to save both contacts and information.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

51. As described above and in Section II of Attachment A, this Application seeks permission to search **TELEPHONE 1** and **TELEPHONE 2** for records that might be found on

**TELEPHONE 1** and **TELEPHONE 2** which will provide evidence of violations of the **TARGET OFFENSE**.

52. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered months or even years after they have been sent/received, accessed, captured, downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files including photos or videos of firearms, downloaded to a storage medium can be stored for years at little or no cost. Similarly, chat communications can be stored locally on the device and are also able to be backed up to remote servers. Users can generally use these remote backups to recover deleted or lost communications.

53. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

54. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

55. Wholly apart from user-generated files, electronic device storage media—in particular, electronic devices' internal storage—contain electronic evidence of how an electronic device has been used, what it has been used for, where it was located, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Electronic device users typically do not erase or delete this

evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

56. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

57. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. Given that **TELEPHONE 1** and **TELEPHONE 2** are in law enforcement custody, I ask permission for law enforcement to search these devices at any time day or night.

## CONCLUSION

58. Based upon the foregoing, you Affiant submits that there is probable cause to believe that Raesean Maleek WILSON committed a violation of Title 18, United States Code, Section 922(g)(1) and that **TELEPHONE 1** and **TELEPHONE 2** contain evidence of this offense.

The above information is true and correct to the best of my knowledge, information, and belief.

> */s/ Ryan P. O'Sullivan*
> RYAN P. O'SULLIVAN
> ATF SPECIAL AGENT

Sworn and subscribed before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 8th day of February 2023.

_____
THE HONORABLE PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

I.  **Device to be Searched:**

a. Purple-colored Apple iPhone, labeled ATF item 020 under case number 766055-23-0021, hereby referred to as **TELEPHONE 1**. This device is currently located in evidence at the ATF Pittsburgh field office, located at 1000 Liberty Avenue, Suite 1414, Pittsburgh, PA 15222.

b. Black-colored Apple iPhone, labeled ATF item 021 under case number 766055-23-0021, hereby referred to as **TELEPHONE 2**. This device is currently located in evidence at the ATF Pittsburgh field office, located at 1000 Liberty Avenue, Suite 1414, Pittsburgh, PA 15222.

II. **Records and Other Information to Be Seized**

1. All records, information, and items evidencing who used the device and/or when and/or from where, as well as evidence of violations of 18 U.S.C. § 922(g)(1) on **TELEPHONE 1** and **TELEPHONE 2**, including:

   a. incoming and outgoing call, text and other chat application message logs,
   b. contact lists,
   c. photo and video galleries,
   d. sent and received text, video and audio messages/files,
   e. online searches and sites viewed via the internet,
   f. online or electronic communications sent and received, including email, chat, and instant messages,
   g. navigation, mapping, and GPS files,
   h. telephone settings, including speed dial numbers and the telephone number for **TELEPHONE 1** and **TELEPHONE 2** and related identifying information such as the ESN for **TELEPHONE 1** and **TELEPHONE 2**,
   i. call forwarding information,
   j. messages drafted but not sent, and
   k. voice messages.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during execution of the search warrant.

3. In searching **TELEPHONE 1** and **TELEPHONE 2**, investigating officers and agents may examine all of the data contained in **TELEPHONE 1** and **TELEPHONE 2** to view its precise contents and determine whether **TELEPHONE 1** and **TELEPHONE 2** and/or its data falls within the items to be seized as set forth above. In addition, they may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth above.